IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

RICO BENTON                                                                                         PLAINTIFF
ADC #097236

v.                                    Case No. 4:22-CV-00746-LPR

DEXTER PAYNE, Director of the Arkansas
Department of Corrections, in an official and
individual capacity; CORNISHA ATKINS,
Corporal, Arkansas Department of Corrections,
Cummins Unit, in an official and individual capacity                        DEFENDANTS

**ORDER**

The Court has received a Partial Recommended Disposition ("PRD") from United States Magistrate Judge Edie R. Ervin.[1] After a *de novo* review of the PRD and the record, and careful consideration of Mr. Benton's objections thereto,[2] the Court concludes that the PRD should be, and hereby is, approved and adopted as this Court's findings to the extent the PRD (1) dismisses all of Mr. Benton's claims against Corporal Cornisha Atkins and (2) dismisses Mr. Benton's official-capacity claim for monetary damages against Director Dexter Payne.[3] The Court parts ways with the PRD, however, to the extent the PRD allows Mr. Benton's official-capacity claim for injunctive relief and individual-capacity claim for monetary damages against Director Payne to proceed.[4]

All of the claims in this case rely on the same factual allegations.[5] On June 17, 2022, Mr. Benton was sitting in his prison cell in "7A, Barracks, Rack 9" of the Arkansas Department of

---

[1] PRD (Doc. 21).

[2] Pl.'s Objs. (Doc. 22).

[3] *See* PRD (Doc. 21) at 6–9.

[4] *See id.* at 9–12.

[5] The Court takes the facts alleged in Mr. Benton's Complaint (Doc. 2) and Amended Complaint (Doc. 6) as true at this stage of the litigation. Strict compliance with the rules of pleading—and Judge Ervin's earlier order in this case—

Correction's (ADC) Cummins Unit.[6]  A prisoner from "7B, Barracks, Rack 42" rushed into Mr. Benton's cell and attacked him with a knife.[7]  Eventually, Mr. Benton was able to put the other inmate "into a choke hold" until the other inmate dropped the knife.[8]  Mr. Benton then released the choke hold, and the other inmate left Mr. Benton's cell.[9]  While it appears Mr. Benton did not get stabbed or seriously injured by the other inmate's knife, Mr. Benton did "suffer[] a bruised and swollen left hand," which prison medical staff deemed to be a fracture.[10]  Mr. Benton has also begun suffering symptoms of Post-Traumatic Stress Disorder since the attack.[11]

Mr. Benton says that on the day of the attack, ADC safety protocols were not followed in the area of the prison in which he was incarcerated.  Specifically, he alleges that:

1. ADC policy requires having only one barracks door open at a time, but the "doors [to] 7A, 7B, 8A, and 8B were opened at the same time[,] which [allowed] inmates to go into different barracks at will."[12]

2. ADC policy requires that security officers search inmates for weapons each time inmates enter and exit barracks, but "this [policy] wasn't followed" on June 17, 2022.[13]

3. ADC policy requires security officers to make rounds every thirty minutes, but no security officer did so on June 17, 2022.[14]

---

would require the Court to look solely at the allegations in the Amended Complaint.  *See* Order (Doc. 4) at 3 (citing *In re Atlas Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)).  But this Court, as did Judge Ervin, will extend Mr. Benton, a pro se litigant, some leniency and also consider the allegations and exhibits contained in the original Complaint.  *See* PRD (Doc. 21) at 3 n.1.  This Court will not consider, however, factual statements made by Mr. Benton in his motion briefing.  It appears that many of the facts relied upon by Judge Ervin come not from either complaint but instead from Mr. Benton's brief.  *See id.* at 5 (citing Pl.'s Br. in Supp. of Claim (Doc. 15)).

[6] Compl. (Doc. 2) at 4, 6; Am. Compl. (Doc. 6) at 4–5.  When citing Mr. Benton's pleadings, the Court uses the page numbers populated by the ECF filing system because the page numbering on the actual pleadings is sometimes inconsistent.

[7] Compl. (Doc. 2) at 4; Am. Compl. (Doc. 6) at 4.

[8] Compl. (Doc. 2) at 4–5; Am. Compl. (Doc. 6) at 4–5.

[9] Compl. (Doc. 2) at 4; Am. Compl. (Doc. 6) at 4–5.

[10] Am. Compl. (Doc. 6) at 5.

[11] *See id.*

[12] *Id.* at 5–6.

[13] *Id.* at 6.

[14] *Id.*

4. ADC policy requires that security officers log inmates' movements in and out of barracks, but that this policy was not followed on June 17, 2022.[15]

5. ADC policy requires four officers to oversee "7A barracks, 7B barracks, and 7 barracks control booth, plus monitor all the traffic in the hallway," but only one officer—Corporal Atkins—was on duty that evening, requiring her to attempt to work all four jobs at once.[16]

According to Mr. Benton, this lack of adequate security both (1) gave the other inmate the window of opportunity to attack Mr. Benton and (2) required Mr. Benton to fend for himself. Mr. Benton is confident that if ADC policy had been followed, there would have been enough security guards in the area to either prevent the attack outright or at least detain the other inmate as soon as the attack occurred.[17] And Mr. Benton finds the failure to follow policy especially unforgiveable in this case because the Cummins Unit is known to be "a violent environment" with "a history of inmate assaults . . . ."[18]

It's understandable that Judge Ervin found an Eighth Amendment failure-to-protect claim lurking within Mr. Benton's pleadings. The Eighth Circuit has allowed such claims when prison officials knew of a dangerous environment and failed to adequately staff that area of the prison.[19] But here, for a number of technical reasons, Mr. Benton's claims against Director Payne cannot proceed as currently pled.

Let's begin with Mr. Benton's individual-capacity claim against Director Payne for monetary damages. An individual-capacity claim under 42 U.S.C. § 1983 requires plausibly

---

[15] *Id.*

[16] *Id.* at 6–7.

[17] *See id.* at 5–7.

[18] *Id.* at 5.

[19] *See Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002); *Lawrence v. Norris*, 307 F.3d 745 (8th Cir. 2002); *Axelson v. Watson*, 746 F.App'x 600 (8th Cir. 2018) (unpublished); *see also Patterson v. Kelley*, 902 F.3d 845, 851–53 (8th Cir. 2018) (acknowledging the rule but granting summary judgment to defendants for lack of evidence).

alleging that the defendant was personally involved in the constitutional violation.[20] As noted, Mr. Benton's pleadings lay an adequate foundation for a constitutional violation by alleging that the Cummins Unit is known to be a dangerous environment and that the area was understaffed when measured against ADC policy. But Mr. Benton does not plausibly allege that Director Payne had knowledge of or involvement in the understaffing. Mr. Benton simply states, in conclusory fashion, that (1) Director Payne knew the Cummins Unit was understaffed and (2) he failed to do anything about it. But Mr. Benton does not allege any facts that actually make it plausible to conclude that Director Payne knew about the understaffing. There's no allegation, for instance, that Mr. Benton or anyone else brought these issues to Director Payne's attention. Without plausibly alleging Director Payne's knowledge, Mr. Benton's claim could survive only if Director Payne is automatically liable for his subordinates' shortcomings. But well-established precedent forecloses holding state officials liable under such a *respondeat superior* theory of liability.[21]

It is true that Mr. Benton is entitled to the benefit of any reasonable inferences that can be drawn in his favor. And Mr. Benton may wish for the Court to infer that Director Payne, by virtue of his official position, knew about the understaffing issue at the Cummins Unit on June 17, 2022. But it is not reasonable to infer that the director of the entire statewide prison system has knowledge of and involvement in the day-to-day staffing decisions of one area of one state prison.[22] If Mr. Benton wishes to sue Director Payne for money damages, he needs more detailed allegations that would make it plausible to conclude that Director Payne bears some personal responsibility for the Cummins Unit being understaffed on the day that Mr. Benton was attacked.

---

[20] *See White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) ("To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation.").

[21] *See, e.g.*, *Montgomery v. City of Ames*, 829 F.3d 968, 972 (8th Cir. 2016).

[22] *See Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." (quotation marks and citations omitted)).

Alternatively, Mr. Benton's claim may be better brought against someone lower on the ADC's food chain—someone with more knowledge of and responsibility for the day-to-day staffing decisions of the Cummins Unit.

Mr. Benton's official-capacity claim for injunctive relief has some problems too. An official-capacity claim is essentially a vehicle for a plaintiff to challenge a State's law, policy, or regulation. While a particular person's name is attached to the lawsuit, the true defendant is really the State law, policy, or regulation itself.[23] But here, Mr. Benton isn't pointing out a problem with any ADC policy. Quite the opposite. Mr. Benton is saying that adherence to ADC policy would have prevented his injuries.[24] That theory of liability is fundamentally at odds with an official-capacity claim.

It is possible that Mr. Benton considers his official-capacity claim in a different light. Perhaps Mr. Benton wants to allege that the ADC's true policy is not what is written on paper but is instead an agency-wide unwritten custom of knowingly understaffing prisons. If that's the case, then this claim suffers from the same issues that plagued Mr. Benton's individual-capacity claim. That is, Mr. Benton has not plausibly alleged that ADC policymakers knowingly enacted a custom that led to understaffing in dangerous environments.

## CONCLUSION

Judge Ervin correctly recommended the dismissal of Mr. Benton's claims against Cornisha Atkins and Mr. Benton's official-capacity claim for monetary damages against Director Payne. This Court adopts those recommendations in their entirety, and those claims are DISMISSED.

---

[23] *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[24] *See* Am. Compl. (Doc. 6) at 7.

The Court does not adopt Judge Ervin's recommendation that, as currently pled, Mr. Benton has stated a plausible Eighth Amendment official-capacity claim for injunctive relief and individual-capacity claim for monetary damages against Director Payne.  Still, the Court acknowledges that Mr. Benton's pleading failures might be fixed by an amendment to his Complaint.  That is, Mr. Benton may be able to plausibly allege an understaffing-based failure-to-protect Eighth Amendment violation by bringing his claims against someone more directly responsible for the alleged understaffing or by alleging more facts showing that Director Payne is personally responsible for the alleged understaffing.  Accordingly, the Court gives Mr. Benton thirty days from the date of this Order to file a Second Amended Complaint that states a plausible Eighth Amendment failure-to-protect claim.[25]  If Mr. Benton does not file a Second Amended Complaint within the prescribed time, the Court will dismiss these claims as well.

IT IS SO ORDERED this 26th day of June 2023.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[25] Mr. Benton must understand that the Court will review *only* the Second Amended Complaint.  As stated in footnote 5 of this Order, the Court extended some leniency to Mr. Benton by considering his original Complaint and his Amended Complaint.  But the Court will not do so again.  Thus, it is critical that Mr. Benton's Second Amended Complaint contain every allegation of fact and every exhibit that he wants the Court to consider with respect to the understaffing-based failure-to-protect claim.